MARY CIVITARESE *vs.* ARTHUR GORNEY.

Middlesex. November 5, 1970. — February 5, 1971.

Present: TAURO, C.J., SPALDING, REARDON, & QUIRICO, JJ.

*Doctor. Negligence,* Doctor. *Proximate Cause. Evidence,* Opinion: expert; Relevancy and materiality; Medical tests; On cross-examination; Competency.

At the trial of an action for malpractice by a nurse against the surgeon in charge of the ear, nose and throat service at a hospital who performed a tonsillectomy there on the plaintiff, evidence that the taking of preoperative tests of blood and urine was a requirement there and at other hospitals in the general area, and testimony of the plaintiff that no such tests were made on her, together with the absence of any notations of such tests in the hospital records, warranted a finding of negligence on the part of the defendant; but, without the aid of expert medical testimony, a finding that the failure to take the preoperative tests was the cause of excessive bleeding and liver and kidney infections suffered by the plaintiff after the operation was not warranted. [656]

At the trial of an action for malpractice brought against a surgeon after he had performed a tonsillectomy at a hospital on the plaintiff, who suffered from an infected kidney following the operation, where evidence admitted warranted a finding of negligence on the part of the surgeon in failing to have preoperative tests of blood and urine taken, but, because of lack of expert medical testimony, did not warrant a finding that such negligence was the cause of the infected kidney, it was prejudicial error to exclude, on cross-examination of the hospital's assistant superintendent, testimony from which it could have been inferred that if the preoperative tests had been taken the operation might not have been performed [656–657]; it was also error in the circumstances to exclude a hypothetical question to the assistant super-

intendent as to whether blood and urine tests taken one day after the operation pointed to "a contra-indication of a tonsillectomy" [657–658].

TORT AND CONTRACT. Writ in the Superior Court dated January 7, 1963.

The action was tried before *Swift, J.*

*Francis X. Goode (Lovell S. Spaulding* with him) for the plaintiff.

*John F. Finnerty* for the defendant.

SPALDING, J. In this action the plaintiff seeks to recover for the alleged malpractice of the defendant in performing a tonsillectomy. The declaration contains three counts, two in tort and one in contract. The judge directed verdicts for the defendant on all counts at the conclusion of the plaintiff's evidence. The plaintiff's bill of exceptions brings here the propriety of the directed verdicts and of rulings excluding certain evidence, to all of which the plaintiff duly excepted.

The declaration, as amplified by specifications, alleges that the defendant negligently prepared for a tonsillectomy upon the plaintiff by failing to make the usual and routine preoperative examinations and by failing to ascertain the results thereof, and that he negligently elected to use local rather than general anesthesia (count 1); that he broke his contract with the plaintiff by not properly analyzing and weighing information given to him and by his choice of surgical technique (count 2); and that he negligently performed a second operation by not placing the plaintiff under anesthesia at a reasonable time (count 3).

We summarize the evidence in the light most favorable to the plaintiff.

The defendant was a surgeon in charge of the ear, nose and throat service at the Boston City Hospital. He saw the plaintiff for the first time on December 6, 1960, and "took a history from her in regard to her complaint of sore throats." He examined only "her ears, nose, throat and neck." The defendant "had not at this time, from either the plaintiff or any other physician attending her, been

made aware of her condition prior to this occasion." He arranged for the plaintiff to undergo a tonsillectomy on January 10, 1961; she was admitted to the hospital on January 9.

A summary of the defendant's testimony includes the following: Prior to the operation he arranged for a urinalysis of the plaintiff and checked the results. When asked if he had a record of such a test, he replied that it would be in the hospital record but that the sheet containing that record was missing. He conceded that there was no entry in the hospital record relative to a blood test or urinalysis. He stated that such tests were "routine," and that although he had no specific recollection of them, he "wouldn't have operated on the patient if the records weren't there." Knowledge of the results of these tests was a preoperative requirement at the Boston City Hospital and at other hospitals in the area.

The defendant removed the plaintiff's tonsils by "dissection and snare," controlled the resultant bleeding by pressure of a "Kelly" instrument, and returned the patient to her room. Late that afternoon he received word that the plaintiff was bleeding from her right tonsil area. The next day, according to the hospital record, the patient was bleeding from both tonsil areas. The resident sutured the left tonsil area, applied silver nitrate to both areas and administered a two unit blood transfusion. The bleeding was stopped, but on the afternoon of January 12, it began again. The defendant put in several sutures and gave more blood transfusions. Later in the day he performed a second operation to stop the bleeding. The next day he observed that the plaintiff had jaundice. He continued to see the plaintiff until January 17, when she refused to be seen by him. The defendant stated that bleeding was "very common," but agreed that "in the normal tonsillectomy" blood transfusions are not required.

An entry from the patient's hospital record was introduced to the effect that after a blood test was administered on January 11, it was concluded that "[t]here is nothing

to suggest bleeding is due to defect in blood coagulation." Also introduced was the portion of the hospital record containing the diagnosis of the plaintiff following the second operation which read: "[i]nfectious hepatitis, acute pyelonephritis, status post-tonsillectomy and post-tonsillectomy bleed — probably means bleeding, bleeding, question of superimposed hemolytic episode, and secondary to transfusion reaction."

The plaintiff testified to the following: She had been a nurse at Boston City Hospital since 1957. Part of her preoperative care of patients included having a "routine urinalysis done." When she was admitted to the hospital January 9, 1961, no samples of her blood or urine were taken. She was conscious during the operation, and described it to the jury. After the defendant removed her tonsils, he commented that there was a lot of bleeding. It was not until after the second operation that a urinalysis was made for the first time.

Dr. James Sacchetti, assistant superintendent of the Boston City Hospital, stated that the usual minimal standard preoperative tests for a tonsillectomy would include a urinalysis and a blood examination. The latter is primarily for blood typing and to determine if there is anemia. The urinalysis is to determine the possibility of kidney infection or kidney disease. The results of these tests are incorporated in the hospital record and made available to the operating surgeon. No such test results appear in the hospital records for either January 9 or 10.

1. The plaintiff urges first that directing verdicts for the defendant on all counts was error because the evidence presented was sufficient to present a question for the jury. To entitle the plaintiff to go to the jury there must be sufficient evidence to warrant a finding (1) of negligence on the defendant's part, and (2) of a causal relationship between the negligence and the plaintiff's injuries. *Semerjian* v. *Stetson,* 284 Mass. 510, 512. *Berardi* v. *Menicks,* 340 Mass. 396, 399.

The standard the defendant was obliged to meet as a specialist was "the standard of care and skill of the average

member of the profession practising the specialty, taking into account the advances in the profession." *Brune* v. *Belinkoff*, 354 Mass. 102, 109. As the defendant himself testified that the taking of preoperative tests of blood and urine was a requirement both at his hospital and at hospitals in the area generally, evidence of failure to take or read these tests would be evidence of negligence. In view of the testimony of the plaintiff that no such tests were made and the absence of any notation of the tests in the hospital records, the jury were entitled to conclude that these tests were never taken.

A more difficult problem is the question of causation. "'It is only in exceptional cases that a jury instructed by common knowledge and experience may without the aid of expert medical opinion determine whether the conduct of a physician toward a patient is violative of the special duty which the law imposes as a consequence of this particular relationship.' . . . The exceptional cases seem to be those 'where the negligence and harmful results are sufficiently obvious as to lie within common knowledge.'" *Haggerty* v. *McCarthy*, 344 Mass. 136, 139–140. While a tonsillectomy is a fairly common operation we are unable to say without the aid of any expert testimony that the defendant's failure to take the routine preoperative tests was causally related to the harm suffered by the plaintiff. But, compare, *Stephens* v. *Williams*, 226 Ala. 534; *Van Sant's Admr.* v. *Overstreet*, 261 Ky. 58. Although we are of opinion that the direction of the verdicts was proper on the evidence introduced, the result might have been otherwise if the judge had not erroneously excluded certain evidence which, we think, had probative value on the issue of causation. Accordingly, for reasons stated below, there must be a new trial.

2. The first ruling excluding evidence on the issue of causation occurred during the testimony of Dr. James Sacchetti of Boston City Hospital who helped prepare the answers to interrogatories directed to the City of Boston (a codefendant at trial). He was being cross-examined under the provisions of G. L. c. 233, § 22, when the follow-

Civitarese *v.* Gorney.

ing occurred: [1] Q. "Doctor, will not a urinalysis also show or possibly show systemic disorders as well as diseased kidneys?" A. "Yes, it very well may." Q. "And if any of those indications are present, they would necessitate further and more sophisticated tests, would they not?" A. "Correct." These questions and answers were objected to by the defendant and excluded by the court, the plaintiff excepting. The questions were relevant and well within the range of cross-examination. It had already been established that one of the plaintiff's conditions after the tonsillectomy was "acute pyelonephritis" or infected kidney. It was error to exclude the above testimony. From it the jury could have inferred that if the tests had been done the operation might not have been performed.

3. The plaintiff also asked Dr. Sacchetti a hypothetical question concerning post-tonsillectomy results. As noted, there were no hospital records of any blood or urinalysis tests made before the operation, but there were tests made on January 11, the day following the operation. The question asked and excluded was: "Doctor, assuming that the records you see there, relative to the plaintiff's blood and urine, were identical to those Dr. Gorney testified were made on January 9th or 10th prior to the operation, do those records indicate a contra-indication of a tonsillectomy?"

This question was relevant since if the answer were affirmative the jury could have concluded not only that no tests were done, but also that the lack of testing led directly to a tonsillectomy that would not otherwise have been performed. The inquiry here is whether this evidence, although relevant, was competent. While evidence of a subsequent condition generally is not admissible to show negligence at a prior time, there are some well recognized exceptions to the rule. Wigmore on Evidence (3d ed.) § 283. This court, by Lummus, J., said in *Beacon Trust Co.* v. *Wright*, 288 Mass. 1, at p. 5, "Sometimes it has been said that 'presumptions,' in the less technical sense of permissible though not com-

---

[1] Dr. Sacchetti was called under G. L. c. 233, § 22, as an agent of the corporate defendant, the City of Boston.

pulsory inferences of fact, 'do not run backwards.' . . . Everyday experience in trials shows that proof of comparatively fixed conditions existing at the time of a past event is commonly made by means of measurements, photographs and views, taken afterwards. . . . The answer depends upon rational probabilities in the light of human experience." We think it was error to exclude this question on cross-examination in the circumstances. The tests on which the question was based were made only one day after the operation. It would not be irrational to infer that the results would not differ materially from those obtained the day before. If it could be shown that there was reason to believe the results of these tests would be different or changed because of the operation, the defendant could have brought this out on direct examination. Since the excluded question was put on cross-examination, no offer of proof was necessary. *Stevens* v. *William S. Howe Co.* 275 Mass. 398, 402.

A number of other questions are raised by the plaintiff, but as these may not arise on retrial, we deem it unnecessary to deal with them.

*Exceptions sustained.*