SIAMAK SAMII & another *vs.* BAYSTATE MEDICAL CENTER, INC. (and a companion case). October 5, 1979. The trial judge correctly denied the defendant hospital's motions for directed verdicts, Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974), for judgments notwithstanding the verdicts, Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974), or in the alternative, for a new trial, Mass.R.Civ.P. 59(a), 365 Mass. 827 (1974), in these actions for medical malpractice resulting in injuries suffered during and as a result of the stillborn delivery of the plaintiffs' child, and for the wrongful death of that child. G. L. c. 229, § 2.

1. There was no error in allowing the plaintiff, Dr. Samii, to testify as an expert in obstetrics and give his opinion of the care and treatment received by his wife from the defendant even though he was a specialist in internal medicine, hematology, and oncology rather than obstetrics. The trial judge's decision on the witness's expertise was not

founded on any error of law (see *Campbell* v. *Thornton,* 368 Mass. 528, 541 [1975]; *Venini* v. *Dias,* 5 Mass. App. Ct. 695, 697-699 [1977]; *Cooper* v. *Richter, ante* 878, 879 [1979]), and, given the evidence concerning Dr. Samii's "education, training, experience and familiarity" with the subject matter of his testimony, "we cannot say the trial judge abused [her] discretion." *DeJesus* v. *Hamel,* 349 Mass. 764 (1965).

2. There was sufficient evidence to warrant jury consideration of whether the defendant was negligent in the care and treatment of the plaintiff Mrs. Samii. *Brune* v. *Belinkoff,* 354 Mass. 102, 109 (1968). *Civitarese* v. *Gorney,* 358 Mass. 652, 655-656 (1971). Dr. Samii testified that it was not good medical practice to admit a woman experiencing labor into the hospital without having her examined by a physician or a resident and thereafter to place her in the labor room attended by a nurse who would call a physician or resident only if she should determine that a medical problem existed. He also explained why these procedures were not good medical practice.

3. The plaintiffs were required to show a causal relationship between the defendant's negligence and their injuries, *Civitarese, supra* at 655, but they were "not required to show the exact cause of [their] injuries or to exclude all possibility that they resulted without fault on the part of the defendant." *Woronka* v. *Sewall,* 320 Mass. 362, 365 (1946). It was for the jury to determine the weight of conflicting testimony (*Sellon* v. *Boston Elev. Ry.,* 208 Mass. 507, 508-509 [1911]; *Chase* v. *Roy,* 363 Mass. 402, 407 [1973]), and they could rely on favorable testimony elicited from the defendant's witnesses. *Martin* v. *Hall,* 369 Mass. 882, 885 (1976). *Donovan* v. *DiPaolo,* 4 Mass. App. Ct. 576, 577-578 (1976). There was evidence to show that when Mrs. Samii entered the hospital she was in labor and a normal delivery was anticipated, although the head of the fetus was not "fixed" at that time; and that failure of the head to become fixed could indicate that the size of the fetus is disproportionate and that a caesarian section might be required. After almost seven hours of labor Mrs. Samii's dilation had not progressed, and her contractions intensified in severity and duration. She was in great discomfort, and she was vomiting. The fetal heartbeat was difficult to find, and it was fluctuating; a fluctuating heartbeat can be a significant indicator of fetal distress. A fetal monitor was available, but the labor room nurse was not educated in its use; the resident on duty knew how to use the monitor. When sometime later the nurses could not detect a fetal heartbeat they called the resident, who examined the plaintiff and saw indications of fetal distress and possible asphyxiation. He performed an emergency caesarian section before the administered anaesthesia took effect on Mrs. Samii, but the baby was stillborn. There was evidence which indicated that if the baby had been delivered by caesarian section about an hour earlier or when there was a normal heartbeat, it would have survived. Although the defendant's witnesses testified that the danger of a stillborn delivery in the circumstances suffered by Mrs. Samii was unlikely, the jury were not precluded from finding that the defendant was negligent in allowing her to remain unattended and without an

examination by a physician or resident and thereby exposing her to a danger which involved an unreasonable risk of harm. *Vigneault* v. *Dr. Hewson Dental Co.*, 300 Mass. 223, 227 (1938).

*Judgments affirmed.*

*Edward L. Donnellan* for the defendant.
*James L. Allen* for the plaintiffs.