RICHARD MEDINA *vs.* FRED H. HOCHBERG.

Suffolk. January 8, 2013. - May 13, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, DUFFLY, & LENK, JJ.

*Negligence,* Doctor, Duty to warn. *Doctor,* Doctor-patient relationship.

In a civil action arising when a patient of the defendant physician suffered a
seizure while operating an automobile, striking and injuring the plaintiff, a
Superior Court judge properly allowed the defendant's motion for sum-
mary judgment, where neither a special relationship between a physician
and a patient [105-107], nor ordinary negligence principles [107-111], give
rise to a duty of care owed by a physician to nonpatients to warn his or her
patient of the dangers of driving posed by the patient's underlying medical
condition.

CIVIL ACTION commenced in the Superior Court Department on
January 23, 2004.

The case was heard by *Maureen B. Hogan,* J., on a motion
for summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Dante G. Mummolo* (*Brendan C. Murphy* with him) for the
plaintiff.

*Michael J. Kerrigan* (*William J. Dailey, Jr.,* with him) for the
defendant.

The following submitted briefs for amici curiae:

*Gregory Broderick & Katie Konz,* of California, *& Donald
R. Pinto, Jr.,* for Pacific Legal Foundation.

*John J. Barter* for Professional Liability Foundation, Ltd.

*Chad P. Brouillard* for Massachusetts Defense Lawyers
Association.

CORDY, J. On December 10, 2001, Robert D. Riskind suffered
a grand mal seizure while driving home from work, causing
him to lose control of his vehicle and strike the plaintiff,
Richard Medina, as he was exiting his motor vehicle (accident).

Riskind's seizure was triggered by an inoperable brain tumor, a condition for which he had been receiving treatment from the defendant Dr. Fred H. Hochberg since its diagnosis in September, 2000. As a result of the accident, Medina sustained serious injuries including a broken right arm that required multiple surgeries. Riskind died in June, 2002, as a result of his brain tumor.

Medina instituted this action in January, 2004, against Francine Pillemer, Riskind's wife, as executrix of his estate.[1] In March, 2005, Medina moved to amend his complaint in order to assert a negligence claim against Hochberg, alleging that he breached a duty owed to Medina to control Riskind's behavior arising from a special relationship between Hochberg and Riskind or, alternatively, that he breached a duty owed to Medina by failing to warn Riskind not to drive.[2] A Superior Court judge concluded that Medina's amended complaint stated a viable negligence claim against Hochberg and allowed the motion to amend. In September, 2009, Hochberg moved for summary judgment arguing that, as a matter of law, he owed Medina neither a duty to control Riskind nor a duty to warn Riskind against driving. A different Superior Court judge (motion judge) granted Hochberg's summary judgment motion. Thereafter, Medina appealed, and we granted his application for direct appellate review.[3]

We conclude, as we did most recently in *Leavitt* v. *Brockton Hosp., Inc.*, 454 Mass. 37, 42 (2009) (*Leavitt*), that a medical professional (other than a mental health professional) owes no duty to a third person arising from any claimed special relationship between the medical professional and a patient. We also

[1]Medina's lawsuit against Riskind's estate settled in June, 2009, and Francine Pillemer, as executrix, is not a party to this appeal.

[2]In his amended complaint, Medina alleged that Hochberg had "negligently and carelessly treated his patient Robert Riskind, and negligent[ly] and carelessly failed to control his patient, by failing to order, advise, caution, warn, and instruct his patient Robert Riskind, to not operate a motor vehicle due to the foreseeable risk of injury to innocent bystanders, such as the plaintiff, who may be on the public way in the vicinity where the patient Robert Riskind was operating his motor vehicle."

[3]We acknowledge the amicus briefs of the Pacific Legal Foundation; the Professional Liability Foundation, Ltd.; and the Massachusetts Defense Lawyers Association.

conclude that Hochberg did not owe a duty of care to Medina under ordinary negligence principles, and decline to extend the narrow rule announced in *Coombes* v. *Florio*, 450 Mass. 182 (2007) (*Coombes*), that a physician owes a limited duty to third parties, foreseeably at risk from a patient's decision to operate a motor vehicle, to warn the patient of the known side effects of medications the physician has prescribed that might impair the patient's ability as a motorist. Accordingly, we affirm the Superior Court judge's allowance of Hochberg's motion for summary judgment.

1. *Background.* In September, 2000, Riskind had a seizure while rowing on the Charles River that, it was later discovered, was caused by an inoperable, malignant brain tumor. Beginning in November, 2000, and continuing through the date of the accident, Hochberg, a physician practicing at Massachusetts General Hospital, was Riskind's treating neurologist. Riskind saw Hochberg at least once a month between November, 2000, and April, 2002, during which time Hochberg closely monitored Riskind's condition. Hochberg had extensive discussions with Riskind about his tumor, his treatment options, and his progress. He explained that under Massachusetts law, Riskind was not permitted to drive for a period of six months from the date of his September, 2000, grand mal seizure.[4] Riskind followed Hochberg's instructions, and did not resume driving until March, 2001.[5]

Following his diagnosis in the late fall of 2000, Riskind suffered from multiple "sensory seizures," which caused him to feel localized numbness or tingling in his upper extremities. However, unlike a grand mal seizure,[6] these sensory seizures did not interrupt normal motor activity, cause difficulty speak-

---

[4]Section 24.06(1) of Title 540 of the Code of Massachusetts Regulations (2012) requires that any person who has "experienced a seizure, syncope, or any other form of altered consciousness which will or may affect the safe operation of a motor vehicle . . . shall be deemed ineligible for a license to operate a motor vehicle [and] shall voluntarily surrender his or her license, . . . until the licensee has been episode free for a minimum of six months."

[5]By that time, Hochberg had noted in his correspondence with Riskind, describing the state of Riskind's condition and symptoms as reported by Riskind and his wife or observed by Hochberg during their frequent examinations, that Riskind was "able to drive and perform [his] usual activity including rowing."

[6]A grand mal seizure, "[a]lso referred to as a generalized tonic-clonic

ing, or produce confusion. Hochberg prescribed medication to control the sensory seizures, which initially helped. Riskind developed a second tumor in the summer of 2001 that increased his sensory seizures, resulting in speech difficulty, an inability to explain his needs to others, headaches, and infacility. Hochberg decided to adjust Riskind's medications, and by October, 2001, Riskind's seizures were occurring less than once per day, and were localized in his right hand. As a result, Riskind's over-all condition improved, and Hochberg noted in a report he sent to Riskind on October 17, 2001, "Most importantly your speech is . . . better. . . . You are now able to converse with individuals, drive a car, [and] speak to patients over the telephone but have not returned to active work."[7] By the end of November, 2001, other than arm stiffness, shortness of breath, and continued speech difficulty, Riskind was having no other "intercurrent problems" and was seizure free. As of December 3, 2001, the date of his last visit with Hochberg prior to the accident, Riskind remained seizure free.

Six days later, on December 10, 2001, Riskind experienced a grand mal seizure while driving home from work, causing the accident and the injuries to Medina at issue here. During the six months following the accident, Riskind's health steadily deteriorated, and he ultimately died on June 28, 2002.

*Discussion.* 1. *Standard of review.* We review a grant of summary judgment de novo. *Miller* v. *Cotter,* 448 Mass. 671, 676 (2007). Summary judgment is appropriate when, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991).

2. *Duty of care owed by physicians to nonpatients.* "Whether a defendant has a duty of care to the plaintiff in the circum-

---

seizure . . . is . . . 'characterized by the sudden onset of [a] contraction of the muscles . . . frequently resulting in a fall to the ground [followed by] convulsive movements [and] a variable period of unconsciousness.' " *Henning* v. *Astrue,* 578 F. Supp. 2d 996, 999 n.1 (N.D. Ill. 2008), quoting Stedman's Medical Dictionary (27th ed. 2000).

[7]Medina suggests that this report is evidence that Hochberg affirmatively advised Riskind that he could drive and encouraged him to do so. Read in context, this status report on Riskind's condition does not support either contention.

stances is a question of law for the court, to be determined by reference to existing social values and customs and appropriate social policy." *O'Sullivan* v. *Shaw*, 431 Mass. 201, 203 (2000), citing *Davis* v. *Westwood Group*, 420 Mass. 739, 743 (1995).[8] A physician owes a legal duty to a patient to provide medical treatment that meets the standard of care of the average qualified physician in his or her area of specialty. *Brune* v. *Belinkoff*, 354 Mass. 102, 109 (1968). In some instances, this may require a physician to warn a patient of the risks associated with his or her treatment. See *Vasa* v. *Compass Med., P.C.*, 456 Mass. 175, 177-178 (2010) (warning patients of symptoms reasonably likely to be experienced as result of medical treatment that will render unsafe everyday activities such as driving is treatment-related medical activity within medical malpractice tribunal statute). In other instances, the standard of care may require a physician to inform a patient of the side effects of prescribed medications if he or she deems such information to be necessary and relevant to the patient making an informed decision. *Cottam* v. *CVS Pharmacy*, 436 Mass. 316, 321 (2002) (*Cottam*). In such cases, the duty is owed by the physician to the patient.

In the present case, Medina argues that we should recognize a parallel duty owed by physicians to members of the public who might be injured by a patient as a consequence of the underlying medical condition that the physician is treating. Medina contends that such a duty arises out of either a purported special relationship between a physician and a patient or ordinary negligence principles. We consider each in turn, and conclude that neither provides a convincing ground to impose such a duty or liability on a physician.

a. *Special relationship.* We squarely addressed this issue in *Leavitt, supra* at 39-44. There, a police officer sued a hospital and two nurses for injuries he sustained when his police cruiser was hit by another automobile as he was responding to an accident involving a sedated patient who had been discharged from the hospital and had been struck by a motor vehicle while

---

[8]Medina's argument that summary judgment is unfounded because "the determination of a foreseeable danger to third parties is a question for the jury" misses the mark. The existence of a legal duty is a question of law for the court. *O'Sullivan* v. *Shaw*, 431 Mass. 201, 203 (2000).

walking on the side of the road. *Id.* at 38-39. In our analysis, we noted that "[a]bsent a special relationship with a person posing a risk, there is no duty to control another person's conduct to prevent that person from causing harm to a third party." *Id.* at 40-41, citing Restatement (Second) of Torts § 315(a) (1965).[9] Because we determined that medical providers do not have a "special relationship" with their patients that would give rise to such a duty, we rejected the police officer's claim. *Leavitt, supra* at 42. We also noted that in *Coombes, supra* at 187, 202, 207 n.3, a "majority of the justices of this court rejected the claim that a duty to third parties to warn a patient derived from a special relationship between the physician and patient." *Leavitt, supra* at 42 n.12. We decline to depart from these precedents.[10]

b. *Ordinary negligence.* We turn to Medina's contention that based on our decision in *Coombes, supra,* we should expand a physician's potential liability by creating a new duty owed by the physician to nonpatients to warn his or her patient of the dangers of driving in light of the patient's underlying medical condition.

In the *Coombes* case, the court considered a similar question, namely "whether a physician owes a duty of care to someone other than his patient for harm caused by his failure to warn the patient of the effects of his treatment of that patient." *Id.* at 183 (Ireland, J., concurring). In that case, the decedent died of injuries he sustained when he was struck by an automobile driven by a man who allegedly lost control of his vehicle due to the side effects of medication that the defendant physician had prescribed. *Id.* at 183-184.

A majority of the court concluded that a physician may be liable to a third party for failing to warn his or her patient of the known side effects of medication prescribed by the physician

---

[9]Restatement (Second) of Torts § 315 (1965), provides in pertinent part: "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct."

[10]We have recognized duties to third parties arising out of special relationships in narrowly prescribed circumstances, none of which is present here. See *Leavitt* v. *Brockton Hosp. Inc.*, 454 Mass. 37, 39-44 & nn.9-13 (2009).

that might affect the patient's ability to drive a motor vehicle.[11] See *id.* at 190, 194 (Ireland, J., concurring); *id.* at 196 (Greaney, J., concurring in part and dissenting in part). The court's holding represented the common ground between Justice Ireland's conclusion that "a physician owes a duty of reasonable care to everyone foreseeably put at risk by his failure to warn of the side effects of his *treatment* of a patient" (emphasis added), *id.* at 190 (Ireland, J., concurring), and Justice Greaney's narrower stance that "a physician who has knowledge of a danger that may be posed to others from a patient's decision to operate a motor vehicle while under the influence of *prescribed medication* [and who] does not warn the patient of the risks involved . . . may be held liable for injuries to others caused by the failure to warn" (emphasis added). *Id.* at 196 (Greaney, J., concurring in part and dissenting in part).

The rationale of Justice Greaney's narrow explication of the duty was based on the principle that "[t]o a physician, it is the patient . . . who must always come first," *id.* at 197 (Greaney, J., concurring in part and dissenting in part), and on the concern that a broader duty to warn of side effects of treatment would place a physician in the untenable position of mediating between his or her loyalty to a patient, on the one hand, and avoiding liability to nonpatients, on the other. *Id.* ("A physician should not, in ordinary circumstance, be held legally responsible for the safety of others on the highway, or elsewhere, based on medical treatment afforded a patient"). Even so, he reasoned that "[e]xtending the scope of liability for the benefit of third parties foreseeably put at risk by an uninformed patient's decision to drive alters neither the physician's medical decision to prescribe medication nor the physician's legal duty under the *Cottam* decision to warn the patient about adverse side effects." *Id.* at 198. Thus, in his view, such a duty would not intrude on the physician-patient relationship. *Id.*

---

[11]This represents the narrowest position of the court, where Justice Ireland (joined by Justices Spina and Cowin) issued a concurring opinion, and Justice Greaney issued an opinion concurring in part and dissenting in part. *McClure* v. *Secretary of Commonwealth*, 436 Mass. 614, 626 n.15, cert. denied, 537 U.S. 1031 (2002), citing *Marks* v. *United States*, 430 U.S. 188, 193 (1977). Chief Justice Marshall and Justice Cordy concluded in their dissenting opinions that a physician's liability did not extend to a nonpatient.

The duty Medina entreats us to establish in this case is significantly broader than the duty we adopted in *Coombes*.[12] It would impose on physicians an affirmative duty owed to non-patients to warn patients of the risks of driving due to *any* underlying medical condition. We conclude this is an unwarranted and ill-advised expansion of liability for several reasons.

First, the difference between the duty proposed by Medina and the more limited one adopted in *Coombes* is not merely a matter of degree; it is a matter of kind.[13] The limited duty recognized in *Coombes* is premised on a physician's affirmative decision to prescribe a drug with known, quantifiable side effects. *Id.* at 194 (Ireland, J., concurring). In prescribing the medication, a physician has created the possibility that the patient might decide to operate a motor vehicle while taking it, experience a known side effect, and cause bodily injury to a nonpatient. Thus, a physician's decision to prescribe medication to his patient creates or increases the risk of harm to the general public.

The risk that Riskind posed, however, cannot be traced back to any affirmative treatment let alone medication prescribed by

[12]The duty Medina proposes is broader than the duty discussed by Justice Ireland, which applied to treatment, but not underlying health problems. See *Coombes, supra* at 186 n.4 (Ireland, J., concurring) ("complaint does not allege negligence resulting from a failure to warn [the decedent] of the dangers of driving due to the underlying health problems for which [the defendant] was treating him. . . . Therefore, the plaintiff's argument regarding a duty to warn of the risk of driving with health problems is not before the court").

[13]Many of the cases from other jurisdictions cited by Medina involve situations where a physician acted in some affirmative manner, e.g., injecting, administering, or prescribing medication. See *Taylor* v. *Smith*, 892 So. 2d 887, 895 (Ala. 2004) (physician's administration of methadone to patient was affirmative act that gave rise to duty to third-party nonpatient motorists); *McKenzie* v. *Hawai'i Permanente Med. Group, Inc.*, 98 Haw. 296, 308-309 (2002) (physician owes duty to nonpatient third parties to warn patient of possible adverse effects of prescribed medication); *Joy* v *Eastern Me. Med. Ctr.*, 529 A.2d 1364, 1366 (Me. 1987) (physician who treated patient by placing patch over his eye owed duty to motorists to warn patient against driving while wearing patch); *Welke* v. *Kuzilla*, 144 Mich. App. 245, 248, 252 (1985) (physician who injected patient with "unknown substance" owed duty to motorists within scope of foreseeable risk, by virtue of special relationship with patient); *Wilschinsky* v. *Medina*, 108 N.M. 511, 515 (1989) (physician owes duty to persons injured by patient driving automobile from doctor's office when patient injected with drugs known to affect judgment and driving ability).

Hochberg. Riskind's seizure activity was a symptom of a naturally-occurring brain tumor. Taken to its logical end, Medina's proposed duty would require warning patients about the dangers associated with driving based on any number of preexisting health conditions, none of which stems from the physician's affirmative treatment of the patient. Thus, we agree with the motion judge's conclusion that the "simple act of accepting Riskind as a patient, with his preexisting medical condition, cannot be the basis for imposing a duty on Dr. Hochberg to an unlimited number of people with whom he has no relationship, with attendant liability for harm caused by the effects of the medical condition . . . not caused by any act of Dr. Hochberg." See *Jarmie* v. *Troncale*, 306 Conn. 578, 607, 618-619 (2012) (*Jarmie*) (no duty to non-patients to warn patient of risks of driving due to underlying condition).

In addition to this important legal distinction, a policy-based, cost-benefit analysis, weighing the benefits of such a duty against the countervailing costs of intruding into the highly personal, confidential physician-patient relationship, also counsels against imposing such an expansive duty. On the one hand, as Medina asserts, the putative benefit of imposing such a duty would be an increase in public safety. On the other hand, such a duty would threaten the autonomous nature of the physician-patient relationship by causing a physician to "become less concerned about the particular requirements of any given patient, and more concerned with protecting himself or herself from lawsuits by the potentially vast number of persons who will interact with and may fall victim to that patient's conduct outside of the treatment setting." *Coombes*, *supra* at 211 (Cordy, J., dissenting). See *Jarmie*, *supra* at 607 (such duty would interfere with physician's duty of loyalty to patient). This in turn would affect the "substance and extent of the doctor's advice and judgment" regarding which underlying conditions require warnings and which do not. *Coombes*, *supra* (Cordy, J., dissenting). See *id.* at 203 (Marshall, C.J., dissenting). It would also invite significantly increased litigation by third parties against doctors, resulting in an attendant increase in expenses at a time when our health care system is already overwhelmed with collateral costs. See *Jarmie*, *supra* at 614. Finally, the duty would also "threaten the con-

fidentiality inherent in the doctor-patient relationship" by potentially requiring a physician to reveal private medical records concerning a patient's underlying medical condition in order to comply with inevitable discovery requests. *Coombes, supra* at 213 (Cordy, J., dissenting). See *Jarmie, supra* at 607.

Because we conclude that the duty proposed by Medina represents an unwarranted expansion of *Coombes,* we decline his invitation to create a new duty based on ordinary negligence principles.

*Conclusion.* In sum, we reject the dual bases presented by Medina for establishing a new duty, and conclude that a physician does not owe a duty to nonpatients to warn his or her patients of the dangers of driving posed by a patient's underlying medical condition. Because Medina cannot show that Hochberg owed him a cognizable legal duty, Hochberg is entitled to summary judgment as a matter of law. Accordingly, the motion judge's grant of summary judgment in favor of the defendant is affirmed.

*So ordered.*