APPEALS COURT 
 
 DOLORES M. BROWN, individually and as personal representative,[1] vs. SAINT VINCENT RADIOLOGICAL ASSOCIATES, INC.

 
 Docket:
 23-P-771
 
 
 Dates:
 April 8, 2024 – October 24, 2024
 
 
 Present:
 Massing, Shin, & D'Angelo, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Negligence, Hospital, Standard of care. Contract, Physician, With hospital. Practice, Civil, Summary judgment.
 
 

       Civil action commenced in the Superior
Court Department on October 18, 2013. 
      The case was heard by J. Gavin Reardon,
Jr., J., on a motion for summary judgment, and a motion for reconsideration was
considered by him.
      Kerry Paul Choi for the plaintiff.
      Megan Grew Pimentel for the defendant.
      MASSING, J.  The defendant, Saint Vincent Radiological
Associates, Inc. (SVRA), an incorporated group of radiologists, entered into a
contract to be the exclusive provider of radiology services for Saint Vincent
Hospital in Worcester (Saint Vincent). 
In this appeal, we consider whether SVRA owed a duty of care in tort to
the plaintiff's deceased husband, Duane C. Brown (Brown),[2] who was admitted
to Saint Vincent in urgent need of SVRA's services and allegedly died because
those services were not provided. 
Concluding that the summary judgment materials were sufficient to
establish that SVRA did owe Brown a duty of reasonable care, we reverse the
summary judgment entered against the plaintiff on her negligence-based claims
against SVRA.
      Background.  1. 
SVRA's contract with Saint Vincent. 
"We summarize the material facts in the light most favorable to the
plaintiff, the nonmoving party." 
Lev v. Beverly Enters.-Mass., Inc., 457 Mass. 234, 235 (2010).  Saint Vincent is an acute-care hospital that
maintains a radiology department on its premises.  SVRA contracted with Saint Vincent in 2010 to
become "the exclusive provider of radiology services of the Department."  The contract required SVRA to provide
full-time services "on a [twenty-four]-hour per day basis every day of the
calendar year," with "a sufficient number, as determined by [Saint
Vincent] in consultation with [SVRA], of Physicians physically present in the
Department to provide full coverage" Monday through Friday during
customary business hours; at least one full-time equivalent physician present
on Saturdays, Sundays, and holidays; and at least one physician on call
"[seven] nights per week" for telephone consultations.  One SVRA physician, selected by SVRA and
approved by Saint Vincent's chief executive officer, would be designated the
hospital's "Chief of Medical Imaging" for the duration of the contract.[3]

      Among the physicians SVRA agreed to make
available were interventional radiologists. 
Whereas traditional radiologists interpret medical imaging and report
their findings to other physicians, interventional radiologists perform
procedures on patients themselves using minimally invasive, image-guided
techniques.  The contract held SVRA
responsible for staffing Saint Vincent's radiology department with qualified
interventional radiologists, including "an additional physician on-call
for interventional radiology procedures and vascular interventional radiology
procedures [seven] nights per week." 

      The contract included a provision stating
that Saint Vincent had separately contracted with "non-radiologist
physicians" to perform and interpret a specific set of "imaging
procedures" for which SVRA was not responsible.  Because some lucrative procedures that could
be performed by SVRA's interventional radiologists were diverted to other
physicians, and the demand for SVRA's interventional radiology coverage overnight
was unexpectedly low, SVRA sought to modify its contract with Saint
Vincent.  It proposed reducing off-hour
coverage, with weekend and holiday interventional radiology coverage "for
emergencies only," acknowledging that "there may be occasional gaps
in coverage as [it] currently exists." 
Saint Vincent did not agree to the proposed modification.
      2. 
Treatment of plaintiff's decedent. 
On December 21, 2011, Brown, age sixty-one, went to Saint Vincent's
emergency department complaining of neck pain. 
He was discharged, received pain medication, and visited his primary
care provider for a cortisol injection. 
His neck pain persisted, and he became confused and delusional.  At approximately 5:30 A.M. on December 24, an
ambulance transported Brown to Saint Vincent's emergency department.  In addition to his ongoing neck pain, he
complained of difficulty breathing and severe abdominal pain.  Supervised by SVRA's attending radiologists,
radiology department residents[4] performed a chest X-ray and a series of
computed tomography scans on Brown's abdomen, pelvis, and brain.  He was diagnosed with acute cholecystitis --
an inflamed and infected gallbladder.  
      Dr. Catherine Martone, the attending
general surgeon on duty, in consultation with Dr. Ryan Friedberg, the
attending emergency department physician, evaluated Brown.  By then, because Brown's condition precluded
surgery to remove his gallbladder, Martone recommended a percutaneous
cholecystostomy, whereby the infection would be drained through a tube inserted
into the gallbladder through the skin.  A
percutaneous cholecystostomy is "a temporizing measure" intended to
stabilize patients until they can withstand surgery.  The tube is typically inserted by an interventional
radiologist in a short, image-guided procedure performed under local anesthesia.  
      At 9:23 A.M., Dr. Ashleigh Van Dijk
took over as Brown's attending physician, relieving Friedberg.  She agreed with Martone's assessment that
Brown was not a candidate for surgery and would "need an emergent
cholecystostomy tube."  Van Dijk
then called SVRA's scheduler, an employee of SVRA, who informed Van Dijk that
on-call interventional radiology coverage was unavailable at that time and
would not be available for another three days. 
As it happened, Dr. Douglas Burd, an attending radiologist and a
partner of SVRA, who was present at the hospital reviewing images -‑ including
Brown's chest X-ray ‑‑ was an interventional radiologist qualified to place a
cholecystostomy tube.  We infer from the
record that Van Dijk was not told that Burd could perform the procedure.
      Brown's condition became critical, and Van
Dijk spoke with Brown's family and the emergency department at nearby UMass
Memorial Medical Center (UMass Memorial) about transferring him there for the
cholecystostomy procedure.  At 11:44 A.M.,
about six hours after Brown had arrived at Saint Vincent, he was transferred to
UMass Memorial.  After his arrival there,
but before a cholecystostomy tube could be inserted, Brown died from infection
of the gallbladder.  
      3. 
Procedural history.  The plaintiff
sued Martone, Van Dijk, and Friedberg in the Superior Court in 2013.  After approximately two years of discovery,
the plaintiff amended the complaint to add Saint Vincent, through two
affiliated corporate entities, and SVRA. 
Against each party, the amended complaint asserted a set of
negligence-based claims, including counts for wrongful death, conscious pain
and suffering, lack of informed consent,[5] loss of consortium, and gross
negligence (collectively, the negligence claims), brought individually and as
the personal representative of Brown's estate. 
The plaintiff asserted an additional claim against SVRA for breach of
its contract with Saint Vincent on the theory that Brown was a third-party
beneficiary of the contract.  SVRA
requested a medical malpractice tribunal, which ruled in the plaintiff's
favor.  In 2018, the plaintiff further
amended the complaint to add a group of emergency department physicians at
UMass Memorial as defendants. 
      The plaintiff's claims against the
individual defendants and Saint Vincent have all been resolved.[6]  With respect to the plaintiff's claims
against SVRA, SVRA moved for summary judgment. 
The motion judge denied summary judgment on the contract claim,
concluding that there were disputed issues of material fact concerning whether
the procedure Brown needed was within the scope of services SVRA was obligated
to provide, and thus whether Brown was an intended beneficiary of SVRA's
contract with Saint Vincent.  The judge entered
summary judgment for SVRA on the plaintiff's negligence claims, concluding that
SVRA had only a contractual obligation to provide services to Saint Vincent,
but did not owe a legal duty to Brown to perform a cholecystostomy.  The plaintiff filed a motion for
reconsideration, which was denied.  
      On March 15, 2023, the plaintiff and SVRA
filed a stipulation of dismissal "without prejudice and without costs, and
preserving all rights of appeal as to any claims on which summary judgment was
granted that are covered by insurance." 
At oral argument before this court, both the plaintiff and SVRA
represented that they had reached a settlement with respect to the contract
claim and that the "without prejudice" language in the stipulation
was meant to preserve the plaintiff's right to appeal from the allowance of
summary judgment with respect to the negligence claims.[7]  The stipulation with SVRA amounted to a
judgment, see Mass. R. Civ. P. 58 (a), as amended, 371 Mass. 908 (1977),
and the plaintiff timely filed a notice of appeal from the allowance of summary
judgment for SVRA on the negligence claims and from the denial of her motion
for reconsideration.  
      Discussion.  The sole issue presented in this appeal is
whether the plaintiff may proceed to trial against SVRA on tort theories of
liability or whether, as a matter of law, those avenues of relief are
foreclosed because SVRA owed no duty to Brown distinct from its contract with
Saint Vincent.  To be entitled to summary
judgment, SVRA must demonstrate that, viewing the record in the light most favorable
to the plaintiff, the plaintiff has no reasonable expectation of proving the
existence of a duty, an essential element of its negligence claims.  See Kourouvacilis v. General Motors Corp.,
410 Mass. 706, 716 (1991); Khalsa v. Sovereign Bank, N.A., 88 Mass. App. Ct.
824, 829-830 (2016).  Our review is de
novo.  See Williams v. Steward Health
Care Sys., LLC, 480 Mass. 286, 290 (2018).
      To situate our discussion of the principal
issue, we briefly set forth the nature of the plaintiff's third-party beneficiary
claim and how it was resolved at the summary judgment stage.  In addition to her negligence claims, the
plaintiff asserted that Brown was an intended beneficiary of SVRA's contract
with Saint Vincent.  Massachusetts law
recognizes "the right of an intended beneficiary of a contract to sue for
its enforcement or breach."  James
Family Charitable Found. v. State St. Bank & Trust Co., 80 Mass. App. Ct.
720, 723 (2011), citing Restatement (Second) of Contracts § 304
(1981).  
      The motion judge concluded that Brown
could be considered an intended beneficiary of SVRA's contract with Saint
Vincent, but only if the contract specifically obliged SVRA "to provide
24/7 interventional radiology coverage that included the placement of a
cholecystostomy tube."  See
St. Charles v. Kender, 38 Mass. App. Ct. 155, 157 (1995) (subscriber to
health maintenance organization [HMO] may maintain claim against physician as
third-party beneficiary of contract between HMO and physician based on
physician's failure to timely provide services to subscriber required by
contract).  The judge found that disputed
issues of material fact remained regarding the scope of SVRA's contract -–
specifically, whether the contract required SVRA to have an interventional
radiologist on call for the procedure, and whether the contract had been
modified.
      Following the denial of summary judgment
as to the plaintiff's third-party beneficiary contract claim, the parties
settled that claim, and we have no occasion to address it further.[8]  For the purposes of this appeal, viewing the
record in the light most favorable to the plaintiff, we assume that SVRA was
contractually obligated to have an interventional radiologist available to
treat Brown.[9] 
      A plaintiff who is not a party to a
contract may have a claim in tort if the contractual relationship between the
other parties gives rise to a duty of care owed to the plaintiff.  See LeBlanc v. Logan Hilton Joint Venture,
463 Mass. 316, 328 (2012); Parent v. Stone & Webster Eng'g Corp., 408 Mass.
108, 113-114 (1990).  "[A] defendant
under a contractual obligation 'is liable to third persons not parties to the
contract who are foreseeably exposed to danger and injured as a result of its
negligent failure to carry out that obligation.'"  Parent, supra at 114, quoting Banaghan v.
Dewey, 340 Mass. 73, 80 (1959).  Thus, in
LeBlanc and Parent, the defendants -- a hotel and an electrical generating
plant, respectively -- which had contracted with other parties to provide electrical
services, were not entitled to summary judgment on tort claims brought by
plaintiffs performing work for those other parties, where the plaintiffs' death
or injury was caused by the defendants' negligent performance of their duties
under their contracts.  See LeBlanc,
supra; Parent, supra at 113-114. 
Likewise in Banaghan, where the defendant elevator company's contract
with a building owner required it to maintain an elevator in safe condition,
the defendant was liable for injuries caused to the plaintiff by the elevator's
unsafe condition.  See Banaghan,
supra.  "In those cases, the
contract created a relationship between the defendant and third parties, by
reason of which the law recognized a duty of reasonable care in the performance
of the obligation, that supported a tort action."  Anderson v. Fox Hill Village Homeowners
Corp., 424 Mass. 365, 368 (1997).
      However, a contractual duty may not give
rise to a duty in tort to third persons if the duty assumed under the contract
goes beyond the duties recognized under common-law tort principles.  Thus in Anderson, 424 Mass. at 367-368, where
the defendant tenant had, in its lease, contractually assumed sole
responsibility for operation and maintenance of the premises, including a
provision requiring the defendant to promptly remove snow and ice from all
driveways and walkways, the defendant was not liable in tort to a plaintiff who
was injured when she slipped and fell on naturally accumulated ice in the
parking lot.  Under the state of the
common law at the time of the decision, the natural accumulation of ice and
snow was not considered to be a property defect for which the landowner was
responsible.  See id. at 369.  The court rejected the plaintiff's argument
that, under the lease, the defendant "assumed a duty greater than that
imposed under tort principles to remove the snow and ice promptly, and
negligently failed to do so," id. at 366, because "failure to perform
a contractual obligation is not a tort in the absence of a duty to act apart
from the promise made."  Id. at
368.  "To conclude that tort
liability exists solely because the defendant did not perform a contractual
duty to remove snow and ice would give rise to a common law duty which we
repeatedly have declined to impose on landowners."   Id. at 368-369.[10]  See Go-Best Assets Ltd. v. Citizens Bank of
Mass., 463 Mass. 50, 59-62 (2012) (bank's contractual agreement with Board of
Bar Overseers, which required it to report to board certain activity in trust
accounts in which attorneys deposited client funds, did not establish duty to
report those transactions to attorneys' clients whose funds were held in
accounts).  
      SVRA argues that its only obligation to
provide an on-call interventional radiologist was a contractual duty it owed to
Saint Vincent, and that it owed no duty of care in tort to provide an on-call
interventional radiologist for Brown, let alone to place a cholecystostomy
tube.  While SVRA may ultimately prevail
at trial in proving that the relevant standard of care did not require it to
have an interventional radiologist available to perform the procedure in
question, it is not entitled to summary judgment on the ground that it owed no
duty to Brown whatsoever.
      To make a claim for negligence, "a
plaintiff must prove that the defendant owed the plaintiff a duty of reasonable
care, that the defendant breached this duty, that damage resulted, and that
there was a causal relation between the breach of the duty and the
damage."  Jupin v. Kask, 447 Mass.
141, 146 (2006).  See Leavitt v. Brockton
Hosp., Inc., 454 Mass. 37, 39 (2009) (applying same elements in patient's
negligence claim against hospital). 
"Whether a party owes a duty of care to another is a legal
question, determine[d] by reference to existing social values and customs and
appropriate social policy" (quotations and citation omitted).  Williams, 480 Mass. at 290.  "Although juries are uniquely qualified
to determine the scope of the duty at issue, the existence of a duty, including
an ordinary duty of reasonable care, 'is a question of law appropriate for resolution
by summary judgment.'"  Shea v.
Caritas Carney Hosp., Inc., 79 Mass. App. Ct. 530, 539 n.12 (2011), quoting
Afarian v. Massachusetts Elec. Co., 449 Mass. 257, 261 (2007).  See Jupin, supra.
      Viewing the facts in the light most
favorable to the plaintiff, under SVRA's contract with Saint Vincent, SVRA
effectively agreed to act as Saint Vincent's radiology department.  Accordingly, it assumed the duty to provide
medical treatment consistent with the standard of care in the practice of
radiology.  See Medina v. Hochberg, 465
Mass. 102, 106 (2013) ("A physician owes a legal duty to a patient to
provide medical treatment that meets the standard of care of the average
qualified physician in his or her area of specialty").  That common-law duty included whatever duty
the radiology department of an acute-care hospital with an emergency unit owes
to the hospital's patients.  See
Restatement (Second) of Torts § 324A (1965) ("One who undertakes,
gratuitously or for consideration, to render services to another which he
should recognize as necessary for the protection of a third person or his
things, is subject to liability to the third person for physical harm resulting
from his failure to exercise reasonable care to protect his undertaking, if
. . . he has undertaken to perform a duty owed by the other to the
third person").[11]
      "Tort obligations are in general
obligations that are imposed by law on policy considerations to avoid some kind
of loss to others.  They are obligations
imposed apart from and independent of promises made and therefore apart from
any manifested intention of parties to a contract or other bargaining
transaction."  Anderson, 424 Mass.
at 368, quoting W. Prosser & W. Keeton, Torts § 92, at 656 (5th ed.
1984).  We have no difficulty concluding
that a hospital with an emergency department owes a duty of reasonable care to
patients admitted on an emergency basis. 
To the extent the standard of reasonable emergency care requires having
certain radiology services available, and to the extent SVRA was required by
contract to provide those services on behalf of Saint Vincent -‑ both of which
are contested issues for trial -‑ SVRA owed a duty of care to patients to
provide those services.  The contract
required SVRA to assume duties to Brown recognized at common law -‑ no more,
but no less.
      SVRA further argues that any common-law
duty must involve affirmative negligent conduct rather than failure to
act.  See Herbert A. Sullivan, Inc. v.
Utica Mut. Ins. Co., 439 Mass. 387, 396 (2003) (Sullivan), quoting Abrams v.
Factory Mut. Liab. Ins. Co., 298 Mass. 141, 144 (1937) ("Although the duty
arises out of the contract and is measured by its terms, negligence in the
manner of performing that duty as distinguished from mere failure to perform
it, causing damage, is a tort"). 
For example, an insurer may be liable in contract for failure to comply
with its duty to defend, but liable in tort for negligent handling of a
defense.  See Sullivan, supra, citing
Abrams, supra at 143-144; Hartford Cas. Ins. Co. v. New Hampshire Ins. Co., 417
Mass. 115, 118 (1994).  As SVRA's
argument goes, it would be liable if one of its radiologists had negligently
performed a percutaneous cholecystostomy on Brown, but it is not liable for failure
to perform the procedure.
      SVRA's reliance on Sullivan is
misplaced.  There, the court held that an
insurer's negligent performance of its contractual duty to defend was a tort
that did not give rise to a claim for breach of contract.  See Sullivan, 439 Mass. at 396-397.  Sullivan does not suggest that failure to act
cannot give rise to a tort claim.  And
even if Sullivan can be read in that manner, this case does not involve a
"mere failure to perform" a contractual duty within the meaning of
Sullivan and the insurance cases it cites. 
Id. at 396.  Unlike an insurer
that refuses to defend altogether, here SVRA affirmatively provided radiology
services for Saint Vincent pursuant to its contract and thus took on a duty of
reasonable care in its performance.  See
id., citing Abrams, 298 Mass. at 144 ("by undertaking the defense of its
insured as mandated by contract, [the insurer] engaged in affirmative action,
and that action exposed its insured's legally protected interests to the risk
of harm.  The insurer's action,
therefore, gave rise to a duty of reasonable performance, the violation of
which was tortious").
      For example, we have affirmed a jury
verdict against a hospital for negligently allowing a pregnant woman who
entered the hospital while in labor "to remain unattended and without an
examination by a physician or resident and thereby exposing her to a danger
which involved an unreasonable risk of harm."  Samii v. Baystate Med. Ctr., Inc., 8 Mass.
App. Ct. 911, 912 (1979).  We have also
reinstated a jury verdict against a hospital in favor of a patient who was
admitted to the emergency room in a disoriented state and was injured falling
off a hospital bed, where the hospital had negligently left the patient
unsupervised and unrestrained.  See Bennett
v. Winthrop Community Hosp., 21 Mass. App. Ct. 979, 980-981 (1986).
      That the negligence in this case may be
attributable to SVRA as an entity, rather than to any individual physician,
does not relieve SVRA of liability.  See
Santos v. Kim, 429 Mass. 130, 135-136 (1999) (recognizing that because of
"variety of organizational schemes that obtains in the provision of modern
medical services," there may be cases of institutional malpractice without
any one responsible physician).  
      There remain disputed issues of material
fact regarding the extent of SVRA's duty and whether it breached that
duty.  The summary judgment record
included the affidavit of Dr. John Robert Kirkwood, a board certified
radiologist, who stated that the standard of care for radiology groups at
larger city hospitals in Massachusetts, including Saint Vincent, was to have
interventional radiology services available at all times.  Similarly, Dr. Michael S. Hickey, a
board certified general surgeon with experience in general and trauma surgery,
opined to a reasonable degree of medical certainty that SVRA "departed
from the standard of care of the average qualified radiology group providing
such services to the [e]mergency [d]epartment when it failed to have an
interventional radiologist on call when Mr. Brown required placement of a
cholecystostomy tube pursuant to hospital policy and its agreement with the
hospital."  See Samii, 8 Mass. App.
Ct. at 912 (hospital liable in tort based on failure to act).  Hickey also stated that SVRA departed from
the standard of care by failing to inform the hospital staff that such services
were not available.  See Millard v.
Corrado, 14 S.W.3d 42, 48 (Mo. Ct. App. 1999) (holding that "'on call'
physicians owe a duty to reasonably foreseeable emergency patients to provide
reasonable notice to appropriate hospital personnel when they will be
unavailable to respond to calls" and that duty "exists independently
of any duties flowing from a physician-patient relationship").
      Finally, the hospital's own policy and
procedures manual required that "vascular and interventional
radiology" services be available during regular business hours, and that a
staff member from the vascular and interventional radiology department be on
call and available at all other times for emergency procedures.  While Saint Vincent's policies do not create
a duty, they are relevant in determining the scope of SVRA's duty in tort as a
radiology department.  See Correa v.
Schoeck, 479 Mass. 686, 697 (2018); Lev, 457 Mass. at 246-247; Mass. G. Evid.
§ 414 (2024).
      We hold that SVRA had a duty to Brown that
existed in tort in the performance of its contractually assumed duties.  SVRA's contract with Saint Vincent created a
relationship between SVRA and Brown "by reason of which the law recognize[s]
a duty of reasonable care in the performance of the obligation."  Anderson, 424 Mass. at 368.  "A patient who goes to the emergency
room, if conscious, is mostly concerned with getting care, not with untangling
the contractual relationship between the hospital and the doctors who work there."  Estate of Essex v. Grant County Pub. Hosp.
Dist. No. 1, 546 P.3d 407, 409 (Wash. 2024).
      Conclusion.  The order granting summary judgment on the
plaintiff's negligence claims is reversed. 
The case is remanded so that the plaintiff may proceed to trial on her
negligence claims against SVRA.
So ordered.

footnotes

[1] Of the estate
of Duane C. Brown.

[2] We refer to
the plaintiff's decedent as Brown, and to Brown's widow, Dolores M. Brown, as
the plaintiff. 

[3] The SVRA
physician designated for this position signed his correspondence as chief of
Saint Vincent's radiology department, even when negotiating with Saint Vincent
on behalf of SVRA. 

[4] The residents
were not members of SVRA.  The SVRA
attending radiologists supervised and worked with the residents.

[5] The plaintiff
claimed that Brown could have been transferred sooner if the defendants had
disclosed the risks and alternatives to the proposed course of diagnosis and
treatment. 

[6] Stipulations
to dismiss the claims against Friedberg and Van Dijk were filed in October
2022.  In early 2023, all claims against
Martone and Saint Vincent were likewise dismissed by agreement.  In March 2023, the plaintiff's claims against
the UMass Memorial physicians were tried before a jury, which handed down a
verdict for the defendants.

[7] Had the parties dismissed the contract claim without prejudice with the
intent to revive it after having obtained appellate review of the allowance of
summary judgment on the negligence claims, this appeal would not be properly
before us.  See Alberti v. Alberti, 104
Mass. App. Ct. 235, 240 (2024). 

[8] SVRA does not
argue that the settlement of the contract claim made the plaintiff's negligence
claims moot.  While the damages that
might be available to the plaintiff as a third-party beneficiary of the
contract overlap with the damages available for malpractice, see
St. Charles, 38 Mass. App. Ct. at 160, the plaintiff's potential recovery
on her wrongful death claims, for example, may exceed the damages available on
the contract claim.  See G. L.
c. 229, §§ 2, 6; G. L. c. 231, § 60H.

[9] At trial,
SVRA is free to argue that its contract did not include this obligation.

[10] The common
law of Massachusetts now recognizes that landowners owe a duty of reasonable
care to remove natural accumulations of snow and ice from their property.  See Papadopoulos v. Target Corp., 457 Mass.
368, 378 (2010).  If Anderson had been
decided today, the defendant would potentially have been liable to the
plaintiff in tort for failure to take reasonable care with respect to the
accumulated snow and ice in the parking lot.

[11] In a case holding that a hospital did not have
a duty to warn third parties when it released a patient who had been civilly
committed, the Supreme Judicial Court noted, "Some courts in other
jurisdictions have determined that, in limited circumstances, hospitals may be
directly liable for care provided in their emergency rooms, and that hospitals
have a duty to provide adequate emergency care. 
At least three States have recognized a hospital's 'nondelegable duty'
to provide adequate emergency medical care."  Williams, 480 Mass. at 295 n.6, quoting
Simmons v. Tuomey Regional Med. Ctr., 341 S.C. 32, 44-46 (2000).  This appeal does not concern, and we express
no opinion on, the allocation of duty as between Saint Vincent and SVRA for the
failure to provide adequate emergency services to Brown.  The plaintiff's claims against Saint Vincent
have been resolved by stipulation of dismissal, and neither Saint Vincent nor
SVRA filed a cross claim against the other.